J-S23003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK J. MYERS | : | |
| | : | |
| Appellant | : | No. 1794 EDA 2025 |

Appeal from the Judgment of Sentence Entered June 12, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007505-2024

BEFORE:   LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED JULY 22, 2026**

Derrick J. Myers appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after the trial court, sitting in non-jury trial, convicted him of one count of unauthorized use of an automobile (UUA).[1]  On appeal, Myers contends the trial court erred in determining he had the requisite *mens rea* to be convicted of UUA and, additionally, that his sentence is illegal.  After careful review, we affirm.

On October 18, 2024, Myers called the police and informed them he was involved in an automobile accident with another vehicle.  **See** N.T. Trial, 1/23/25, at 12.  Philadelphia Police Officer Xavier Ocasio arrived on the scene to find a vehicle and moped pulled off to the side of the road.  **Id.** at 14.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3928.

Officer Ocasio spoke to both parties[2] and observed that the moped, "had scratches on it, there was no license plate, [] the front panel was popped, [and] there were wires spliced together."[3] *Id.* at 17. Based on these observations, Officer Ocasio ran the vehicle identification number and discovered that the moped had been reported stolen a few weeks earlier by the owner, Benjamin Suarez. *See id.* at 17. Myers began to leave the scene on foot and Officer Ocasio asked Myers to remain on the scene, which he did. *See id.* at 16. Officer Ocasio asked Myers for paperwork showing proof of purchase of the moped, but Myers was unable to produce any.[4] *See id.* at 17. Officer Ocasio took Myers into custody because he believed the moped to be stolen. *See id.* at 19.

On January 23, 2025, the trial court conducted a non-jury trial during which Myers and Suarez testified. Myers testified that he did not know the moped was stolen. *See id.* at 48. However, Suarez testified that on or about October 3, 2024, he reported his moped stolen after it went missing from

_____

[2] The other individual involved in the vehicle accident is unnamed in the record and did not testify.

[3] At the time of the incident, Myers told Officer Ocasio that someone else had spliced the wires for him, but at trial he explained he did it himself after the wires burned and got disconnected See N.T. Trial, 1/23/25, at 49. He testified that he lied at the scene because he was "paranoid." *See id.* at 51-52.

[4] At trial, Myers testified that he bought the moped from a long-time acquaintance, Aaron Manford, for $1,100.00 and received the title with purchase. *See* N.T. Trial, 1/23/25, at 46. Further, he testified that he told Officer Ocasio that the title was inside the moped but never provided it to Officer Ocasio. *See id.*

outside his house. *See id.* at 34. Suarez also testified that he gave no one permission to take or use his moped on or after October 18, 2024. *See id.* at 35-36.

At the close of testimony, the trial court convicted Myers of UUA. The court deferred sentencing, ordered Myers to undergo a mental health evaluation and directed the preparation of a pre-sentence investigation report. On June 12, 2025, the trial court sentenced Myers to two years of probation with conditions that he undergo mental health therapy and drug screening, and maintain employment. The court also ordered Myers to pay $833.95 in restitution. *See* N.T. Sentencing, 6/12/25, at 30.

Myers filed a timely notice of appeal followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Myers now raises the following issues for our review:

> (1)  [W]as the evidence [] insufficient as a matter of law to find that []Myers committed the offense of UUA where the moped was stolen weeks before its recovery and [] Myers stated he purchased the vehicle, had keys, and provided an explanation for the damage to the wiring?
>
> (2)  [D]id the lower court impose an illegal sentence when ordering [] Myers to pay $833.95 in restitution [as a condition of probation] without first considering [] Myers' ability to pay in accord with 42 Pa.C.S.A. § 9763(b)(10)?

Appellant's Brief, at 3.

In his first issue on appeal, Myers argues that he did not have the minimum *mens rea* required to be convicted of UUA. *See id.* at 6. Myers argues that the Commonwealth did not prove the specific *mens rea* of

- 3 -

recklessness because he purchased the moped from a known acquaintance, paid a reasonable sale price, received keys upon purchase, and had no reason to believe it was stolen. *See id.* at 10-12.

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

UUA is defined as "operat[ing] the automobile, airplane, motorcycle motorboat, or other motor-propelled vehicle of another without consent of the owner." 18 Pa.C.S.A. § 3928(a).[5] As such, "[r]ecklessness is the minimum culpability necessary with respect to the lack of the owner's consent."

---

[5] 18 Pa.C.S.A § 302(c) explains that "when the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly[,] or recklessly with respect thereto."

*Commonwealth v. Hogan*, 468 A.2d 493, 495-96 (Pa. Super. 1983). "A person acts recklessly with respect to such lack of consent if he consciously disregards a substantial and unjustifiable risk that the owner has not consented." *See id.*

The trial court found that the Commonwealth established beyond a reasonable doubt that Myers was reckless as to lack of consent from the owner, Suarez, in operating the moped. *See* N.T. Trial, 1/23/25, at 35-36. It cited the evidence of damage to the moped, including "a missing front panel and spliced wires." *See* Trial Court Opinion, 11/17/25, at 4. The trial court determined that there was evidence of damage to the moped based on the spliced wires. *See* N.T. Trial, 1/23/25, at 43; See Trial Court Opinion, 11/17/25, at 4. Moreover, the court cites the testimony from both Officer Ocasio and Suarez regarding the wire damage, the missing front panel, and scratches on the moped. *See id.* at 12; *See* Trial Court Opinion, 11/17/25, at 4. Suarez testified that there was no damage prior to the moped being stolen and, upon finding it, he explained, "[T]he hood was basically ripped open and hot[-]wired, the back seat was basically ripped open." *See* N.T. Trial, 1/23/25, at 33-34. Finally, the court found that Myers' attempt to walk away from the collision indicated that he was using the moped without consent. *See id.*

We agree with the trial court's finding that the Commonwealth presented sufficient evidence to establish Myers was, at a minimum, reckless with respect to the consent element of UUA. The moped was reported stolen,

and there was no evidence to substantiate Myers' claim that he received good title. *See Hogan*, 468 A.2d at 497 ("Not only was [defendant] unable to produce an owner's card, but he had no operator's license. Under these circumstances, it was not irrational to infer that he knew or should have known that he did not have the owner's consent to operate the vehicle"); *Commonwealth v. Utter*, 421 A.2d 339, 341 (Pa. Super. 1980) (affirming conviction where vehicle was stolen and appellant did not have a registration card or permission to use it). Furthermore, the trial court reasonably found that the damage to the moped, including the missing front panel, spliced wires, and scratches, should have alerted Myers that the vehicle was stolen. *See Commonwealth v. Carson*, 592 A.2d 1318, 1322 (Pa. Super. 1991) ("Moreover, the stolen car had a broken vent window on the passenger side of the car and a broken steering column. From these physical features the fact finder could infer that Carson knew or should have known that the vehicle was stolen."). Moreover, Myers' attempt to walk away from the scene "corroborates the inference of guilty knowledge." *Id.* at 1321. Finally, as the reviewing court, we are bound to consider the facts in the light most favorable to the Commonwealth as verdict winner. *See Smith*, *supra*. In light of the foregoing, we conclude that, under the totality of the circumstances, the Commonwealth met its burden of proving beyond a reasonable doubt that Myers had the requisite *mens rea* for UUA.

In his final claim on appeal, Myers argues that the court imposed an illegal sentence by failing to consider his ability to pay the restitution imposed

under section 9763(b)(10). **See** Appellant's Brief, at 13. Myers contends that the restitution was imposed as a condition of probation pursuant to section 9763(b)(10), not as a direct sentence pursuant to 18 Pa.C.S.A. § 1106. **See id.** at 14.

> In the context of criminal proceedings, it is well-settled that an order of restitution is not simply an award of damages, but, rather, a sentence. . . An appeal from an order of restitution based upon a claim that a restitution is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. When we address the legality of a sentence, our standard of review is plenary and is limited to determining whether the trial court erred as a matter of law.

**Commonwealth v. McKee**, 38 A.3d 879, 880-81 (Pa. Super. 2012) (internal quotations and citations omitted). Section 9763 sets forth the following regarding conditions of probation:

> **(a) General rule.--**In imposing **probation**, the court shall consider guidelines adopted by the Pennsylvania Commission on Sentencing under section 2154 (relating to adoption of guidelines for sentencing) or 2154.1 (relating to adoption of guidelines for restrictive conditions) and specify at the time of sentencing the conditions of probation, including the length of the term of restrictive conditions under subsection (c) or (d). The term of restrictive conditions under subsection (c) shall be equal to or greater than the mandatory minimum term of imprisonment required by statute.
>
> **(b) Conditions generally.--**Conditions shall be assessed and ordered based on individualized circumstances. Following an individualized assessment of the defendant, including the defendant's history and the underlying crime or crimes committed, the court shall attach only those conditions that the court deems necessary and the least restrictive means available to promote the defendant's rehabilitation and protection of the public, including any of the following:

* * *

(10)  To make restitution of the fruits of the crime or to make reparations, in an affordable amount and on a schedule that the defendant can afford to pay, for the loss or damage caused by the crime.

42 Pa.C.S.A. §§ 9763(a), (b)(10) (emphasis added).

Section 1106 of the Crimes Code sets forth the following regarding restitution for injuries to person or property:

**(a) General rule**.--Upon conviction for any crime wherein:

(1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or

(2) the victim, if an individual, suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

**(b) Condition of probation or parole.--**Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, the offender's compliance with such order may be made a condition of such probation or parole.

**(c) Mandatory restitution.--**

(1) The court shall order full restitution:

**(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss[.]**

18 Pa.C.S.A § 1106 (emphasis added).

"The plain language of Section 1106(a) makes clear, as relevant here, that a sentencing court is required to impose restitution as a sentence upon conviction of a crime when the victim's property has been "substantially

- 8 -

decreased in value as a direct result of the crime." ***Commonwealth v. Weir***, 239 A.3d 25, 37 (Pa. 2020). When imposed as a sentence, the injury to property or person for which restitution is ordered must directly result from the crime." ***Commonwealth v. Holmes***, 155 A.3d 69, 78 (Pa. Super. 2017) (internal citations omitted); ***see also Commonwealth v. Harner***, 617 A.2d 702, 705 (Pa. 1992) (restitution under section 1106 requires direct nexus between loss and amount of restitution). Moreover, under section 1106(c)(1)(i), when restitution is imposed as a sentence, the court is not required to consider a defendant's ability to pay. ***See*** 18 Pa.C.S.A. § 1106(c)(1)(i).

Upon review, we conclude that Myers' claim is meritless. Contrary to Myers' argument, the court is not required to consider Myers' ability to pay restitution under section 9763(b)(10) because of the nature of the crime committed. ***See*** 42 Pa.C.S.A § 9763(b). Here, because the crime involved injuries to property, section 1106(c) requires mandatory restitution. ***See*** 18 Pa.C.S.A. § 1106. Pursuant to section 1106(a)(1), restitution may be ordered as a mandatory condition of probation to provide compensation to the victim. ***See*** 18 Pa.C.S.A. § 1106(a)(1); ***See Weir supra***. Here, the trial court based imposed restitution consistent with the cost of repairing Suarez's moped, based on documentation Suarez provided to the court. ***See*** N.T. Sentencing, 6/12/25 at 17, 34 (restitution amount identical to total of receipts provided by Suarez). The trial judge reiterated such at sentencing saying, "I am going to order the repayment of restitution in this case, which is $833.95. Mr. Myers,

hopefully during the course of your supervision, you'll have employment and you'll be able to make small payments towards that restitution over the course of time." **See** N.T. Sentencing, 6/12/25, at 29. Thus, it is clear that Myers' restitution was intended to compensate Suarez pursuant to section 1106(a)(1), and, as such, the court was not required to consider Myers' financial situation. **See** Trial Court Opinion, 11/17/25, at 5; **see**, **e.g**., **Harner**, **supra**; **Holmes**, **supra**. Consequently, the trial court did not impose an illegal sentence when it declined to consider Myers' ability to pay.[6]

Judgment of sentence affirmed.

_____

[6] We note that even where restitution is imposed as part of the sentence, a subsequent probation or parole revocation proceeding still requires a trial court to conduct a hearing to determine ability to pay prior to imposing incarceration as a punishment. **See** 18 Pa.C.S.A. § 1106(c)(2)(iii) ("In determining the amount and method of restitution, the court[] . . . [s]hall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay."); **see also Commonwealth v. Smetana**, 191 A.3d 867, 871-72 (Pa. 2018) ("[b]efore an offender can be confined solely for nonpayment of financial obligations he or she must be given an opportunity to establish inability to pay"); **Commonwealth v. Larison**, 335 A.3d 338,*4 (Pa. Super. 2025) (unpublished memorandum decision) (emphasizing subsection 1106(c)(2)(iii) prohibits incarceration of defendant for failure to pay restitution if failure results from defendant's inability to pay). **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of Superior Court filed May 1, 2019, may be cited for persuasive value).

J-S23003-26

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2026